UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2004 NOV 29 P 4: 25

U.S. DISTRICT COURT
DISTRICT OF MASS.

|   |   |
|---|---|
| SARAH HORTON,<br><br>Plaintiff,<br><br>v.<br><br>TOWN SPORTS INTERNATIONAL, INC., and TSI FENWAY, INC. d/b/a BOSTON SPORTS CLUBS,<br><br>Defendants. | Civil Action No. 04-CV-12359-MEL |

### MEMORANDUM IN SUPPORT OF DEFENDANT TSI FENWAY, INC.'S MOTION TO DISMISS COUNTS I AND III OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT OF COUNT III

Defendant TSI Fenway, Inc. ("TSI Fenway" or "the Company") submits this Memorandum in support of its Motion to Dismiss Counts I and III or, in the Alternative, Motion for a More Definite Statement of Count III.

### Summary of Argument

The claim brought by Plaintiff Sarah Horton ("Plaintiff" or "Horton") as stated in her Amended Complaint consists of three counts: Count I alleges breach of an implied contract; Count II alleges gender discrimination; and Count III alleges a breach of the covenant of good faith and fair dealing.

Horton's claim for breach of an implied contract (Count I) should be dismissed because she fails to state a claim upon which relief can be granted. Horton alleges that an employee handbook altered her employment at-will status and obligated TSI Fenway to follow a progressive discipline policy and complaint handling procedure when

terminating her employment. However, the handbook on its face informed Horton that she was an employee at-will, the handbook was not a contract, and that the Company reserved the right to unilaterally alter the guidelines set forth in the handbook at any time. In any event, even if, for the sake of argument, the handbook is a contract, it does not create the duty Horton alleges. Accordingly, Horton's breach of an implied contract claim should be dismissed.

In addition, Horton's claim for breach of the implied covenant of good faith and fair dealing (Count III) should be dismissed. When Horton first filed her action, Horton's claim for breach of the implied covenant of good faith and fair dealing rested on allegations that TSI Fenway terminated her employment without conducting an adequate investigation or providing her the opportunity to present her position. (See Complaint, Count III.) Such allegations clearly did not state a claim under Massachusetts law. The Company, in accordance with the Local Rules, contacted Horton's counsel concerning the deficiency of the allegations and informed him that it intended to file a motion to dismiss. In a last minute attempt to ward off TSI Fenway's motion, the very day it was prepared to file its motion, Horton filed an Amended Complaint restating Count III. Count III no longer turns on TSI Fenway's allegedly inadequate investigation, but rather now turns on ambiguous allegations of deprivation of commissions. Count III still fails to state a claim for relief. Plaintiff does not allege that she did not receive commission payments or even that she did not receive commission payments accrued but still dependent upon a contingency. In fact, she does not even allege efforts made but the fruits of which she will not receive. In such circumstances, Horton has failed to allege a claim for breach of the implied covenant of good faith and fair dealing. The claim should

be dismissed. At a minimum, the Court should order Horton to provide a more definite statement of Count III.

### Statement of Relevant Facts as Alleged in the Amended Complaint

The following facts are alleged in the Amended Complaint.

Horton was employed as a Sales Consultant at Boston Sports Club located in Boston, Massachusetts from Summer 2002 until February 2003.[1] (Amended Complaint at ¶¶ 16, 33.) As a Sales Consultant, Horton was responsible for securing new members for Boston Sports Club, and she received a commission for each new membership sold. (Id. at ¶¶ 13, 15.) Twice a year, Boston Sports Club would conduct a sales promotion to attract new members. One such sales promotion, conducted in January 2003, used VIP coupons which offered discounted membership prices. (Id. at ¶¶ 17, 18.) Specifically, all TSI Fenway employees were given VIP coupons to distribute to family and friends who were not already members of Boston Sports Club. (Id. at ¶ 19.) Employees were not supposed to distribute VIP coupons to "walk in guests."[2] (Id. at ¶ 20.)

Some employees who received VIP coupons gave them to the Sales Consultants to distribute. (Id. at ¶ 22.) An assistant manager gave Horton some of her VIP coupons to distribute. (Id. at ¶ 27.) Horton gave one of the VIP coupons to a customer who had been using the Boston Sports Club facility on a trial basis for several days. (Id. at ¶ 28.) Since the customer had been using the facility for several days, Horton did not believe the customer was a "walk in guest." (Id. at ¶ 29.)

---

[1] Prior to that time, she worked as a Sales Consultant at a Boston Sports Club in Natick, Massachusetts operated by TSI Natick, Inc. (Amended Complaint at ¶ 10.)
[2] TSI Fenway did not provide any written guidance to employees about the distinction between family, friends and "walk in guests." (Amended Complaint at ¶ 20.)

3

In late January 2003, TSI Fenway's General Manager investigated Horton's distribution of VIP coupons and determined that Horton abused the VIP coupon program. Horton was suspended on February 4, 2003 and terminated on February 10, 2003. (Id. at ¶¶ 31, 33.) Horton did not receive the opportunity to defend herself in the General Manager's investigation or in the course of the decision to suspend or terminate her employment. (Id. at ¶ 34.)

Horton alleges that TSI Fenway wrongfully terminated her because it failed to conduct a reasonable investigation in accordance with the Progressive Discipline Policy and Complaint Handling Procedure set forth in the Employee Handbook (a copy of which is attached as Exhibit A to the Affidavit of Jane Russell[3]). (Amended Complaint at ¶¶ 37, 42 and Counts I and III.) Horton alleges that she received the Employee Handbook when she began employment with the Company, endeavored to comply with the policies set forth therein, and believed that she and the Company were obligated to comply with the policies set forth therein. (Id. at 11, 12, 37.)

### Argument

I.  **COUNT I SHOULD BE DISMISSED BECAUSE HORTON FAILS TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED.**

In Count I, Horton alleges that TSI Fenway "breached an implied contract of employment by terminating Plaintiff's employment without following the Progressive Discipline Policy and Complaint Handling Procedure set forth in Employees' Handbook." (Amended Complaint at ¶ 44.) In support of her claim, Horton alleges:

---

[3] Because Horton refers to and relies upon the Employee Handbook throughout her Amended Complaint, the Court may consider the contents of the Employee Handbook (Exhibit A to the Affidavit of Jane Russell) without converting the motion to dismiss to a motion for summary judgment. E.g., Cogan v. Phoenix Life Ins. Co., 310 F.3d 238, 241 n. 4 (1st Cir. 2002); Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1220 (1st Cir. 1996). Likewise, the Court may consider the Acknowledgement showing when Horton received a copy of the Employee Handbook (a copy of which is attached as Exhibit B to the Affidavit of Jane Russell).

4

- "At the time of her hire, Plaintiff was asked to sign the TSI Employee Handbook thus obligating her to adhere to all the policies and procedures of TSI." (Id. at ¶ 11.)

- "During her employment, Plaintiff endeavored to comply with every policy and procedure set forth in the Employee Handbook." (Id. at ¶ 12.)

- "Plaintiff never had an opportunity to explain her actions or her understanding of the VIP coupon program with TSI representatives as Plaintiff was summarily terminated without the benefit of a discussion with Ms. Gondelman, TSI management or the TSI Human Resources Department." (Id. at ¶ 34.)

- "In terminating Plaintiff, TSI elected to ignore the Progressive Discipline Policy and the Complaint Handling Procedure outlined in the TSI Employee Handbook." (Id. at ¶ 35.)

- "Plaintiff asserts that the investigation conducted by TSI was inappropriate and incomplete and did not conform to the TSI Complaint Handling Procedure set forth in the TSI Employee Handbook." (Id. at ¶ 36.)

- "Plaintiff believed when she was hired that she and TSI would be obligated to follow the Progressive Discipline Policy and Complaint Handling Procedure unless later modified by TSI." (Id. at ¶ 37.)

In Massachusetts, "the general rule [is] that employment at-will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all." Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472, 589 N.E.2d 1241, 1244 (1992) (quoting Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9, 525 N.E.2d 411, 412 (1988) (internal quotation marks omitted)). Indeed, "[i]t is well settled…that employment is presumed to be at-will unless there exists an express or implied contract governing its terms and conditions." Hinchey v. NYNEX Corp., 144 F. 3d 134, 141 (1st Cir. 1998). An employee handbook does not generally alter the at-will relationship. It is only in limited circumstances that an employee handbook may create an employment contract altering an employee's at-will status where "the employee reasonably believes that the employer was offering to

continue the employee's employment on the terms stated in the manual." Chilson v. Polo Ralph Lauren Retail Corp., 11 F. Supp.2d 153, 157 (D. Mass. 1998) (quoting O'Brien v. New England Telephone & Telegraph Co., 422 Mass. 686, 692-693, 664 N.E.2d 843 (1996) (internal quotation marks omitted)).

Thus, to state a claim for breach of an implied contract based on an employee handbook, Horton must show that: she reasonably believed that the employee handbook set forth terms of employment to which the Company was bound; the handbook contained a duty breached by the Company; and she suffered damages as a result of the Company's breach. Id. As explained below, based on the language of the Employee Handbook itself, Horton cannot show that she reasonably believed the Employee Handbook was a contract or that TSI Fenway breached a duty set forth therein. Accordingly, her claim should be dismissed.

### A. Based On The Language Of The Employee Handbook, Horton Cannot Show That She Reasonably Believed The Employee Handbook Created A Contract.

Horton must first show that the Employee Handbook actually created a contract. When determining whether an employee could reasonably believe that an employee handbook creates a contract altering at-will status, Massachusetts courts consider factors such as: whether the terms of the handbook were the subject of negotiation; whether the employer retained the right to unilaterally modify the terms of the handbook; whether the employee was required to sign the handbook; whether the handbook's language provides guidelines as opposed to specific terms; whether the employer retains the right to discharge an employee without cause; and whether the handbook creates a disciplinary procedure identifying grounds for termination. Id.; Hinchey, 144 F.3d at 141.

In the present case, the Employee Handbook clearly did not create a contract altering Horton's at-will status. The very first page of the Handbook informs employees that it is not a contract and their employment is at-will: "***This handbook is not a contract*** and does not constitute a guarantee that your employment will continue for any specified period of time or end only under certain conditions. Notwithstanding any statements in this handbook, employment at [the Company] is a voluntary relationship for no definite period of time and either you or the Company may terminate the relationship at any time with or without reason or advance notice." (Employee Handbook at p. 1 (emphasis supplied).) The first page of the Handbook also informs employees that TSI Fenway reserves the right to unilaterally alter the terms of the Handbook at any time: "The Company may, in its sole discretion, create, amend, supplement, modify or eliminate any benefits, rules or policies without prior notice to employees." (Employee Handbook at p. 1.)

The Company does not rely simply on the first page to preserve its at-will relationship with employees and authority to unilaterally alter terms of employment. There are reminders throughout the Handbook. (E.g., Employee Handbook at pp. 5, 10, 16 (see "Benefits & Services"), 27, 35 (see "Reduction in Workforce" and "Resignation").) Indeed, there is a separate section titled "Employment Relationship" which informs employees again, "Your employment with [the Company] is 'at will' and entered into voluntarily. You are free to resign at any time, for any reason, with or without notice. Similarly, the Company is free to conclude the employment relationship at any time." (Employee Handbook at p. 5.) The language for all statements is conspicuous and is not relegated to fine print or the bottom of the page. E.g., Hinchey,

144 F.3d at 142 (handbook did not create a contract where, among other things, it contained disclaimers and reserved to the employer the right to unilaterally modify its terms); Chilson, 11 F. Supp.2d at 157 (handbook did not create a contract where, among other things, it contained language throughout reminding employees that the handbook does not create a contract and that it may terminate employment at any time); Barry v. Chase Precast Corp., 2004 WL 233323 (Mass. Super. 2004) (Agnes, J.) (handbook did not create a contract because, among other things, it contained disclaiming language that was conspicuous in normal font and typesize).

Further indication that there is no contract is that the Employee Handbook does not set forth a term of employment, and consists mainly of guidelines. See Chilson, 11 F. Supp.2d at 157. For example, the Handbook contains policies which state philosophies the Company follows in the workplace, such as an Open Door Policy and Union-Free Employee Relations. Policies which concern terms of employment, like the General Wage and Salary Policy, Progressive Discipline Policy, and Complaint Handling Procedure, are stated in general language that refers employees to other sources for more specifics and reserves all discretion to management. Language used throughout consists of phrases such as "may vary from department to department," "in most cases," "will usually be," "our goal is," and "from time to time." (E.g., Employee Handbook at pp. 14, 25, 28, 35.) See Chilson, 11 F. Supp.2d at 157.

The Progressive Discipline Policy specifically reserves to the Company the discretion to determine whether an employee has committed conduct warranting discipline or discharge; states that the discipline given will vary; informs that the list of infractions provided is given by way of example and is not exclusive; reserves the

Company the right to immediately terminate an employee; and states that the policy does not "alter the employment-at-will relationship." (Employee Handbook at pp. 9-10.) The Complaint Handling Procedure is a grievance mechanism available to employees if they are dissatisfied with how management is handling any issue. Like the Progressive Discipline Policy, management ultimately retains all discretion. (Employee Handbook at p. 8.)

Finally, the Employee Handbook was not negotiated. E.g., Hinchey, 144 F.3d at 142 (handbook was not a contract because, among other things, it was not negotiated). As Horton alleges, when she was hired, she was asked to sign the Handbook. (Amended Complaint at ¶ 11.) The Acknowledgement Receipt signed reaffirms that the Employee Handbook is not a contract and does not alter the at-will status of her employment. Indeed, the Acknowledgement Receipt specifically states: "I understand that my employment with [the Company] is on an 'at-will' basis and that ***this handbook is not a contract of employment, express or implied, between me and my employer***, and that I should not view it as such, or as a guarantee of employment for any specific duration." Acknowledgement of Receipt, Exhibit B to Affidavit of Jane Russell) (emphasis supplied). Joyce v. GF/Pilgrim, Inc., 2003 WL 22481100 (Mass. Super. 2003) (Hinkle, J.) (court granted employer summary judgment on employee's breach of contract claim based on an employee handbook because the employee signed an acknowledgement that stated the handbook was not a contract).

All of these factors together show that, as a matter of law, the Employee Handbook is simply not a contract.

### B. Horton Has Not Sufficiently Alleged That The Company Breached Any Duty Contained In The Handbook.

Horton has also not sufficiently alleged that the Company breached any duty set forth in the Handbook. Her allegations boil down to the contention that the investigation was inadequate and failed to comply with the Progressive Discipline Policy and the Complaint Handling Procedure. (Amended Complaint at ¶¶ 34, 36.)

As an initial matter, the Complaint Handling Procedure is essentially a grievance mechanism that provided Horton a means for addressing her complaints and which Horton was responsible for initiating. The Complaint Handling Procedure states in pertinent part:

> Under normal conditions, if you have a job-related problem, question or complaint, you should discuss it with your manager...
>
> If the discussion with your manager does not answer your question or resolve the matter to your satisfaction, you may then present your complaint, orally or in writing, to the next higher level of management. If the matter is still not resolved satisfactorily, you may present your complaint in writing to the director of human resources who will facilitate a final decision on the matter after an appropriate investigation...

Employee Handbook at p. 8. In her Amended Complaint, she fails to allege that she initiated the grievance mechanism. In O'Brien, the Massachusetts Supreme Judicial Court rejected an employee's claim for breach of the employee handbook where the employee failed to follow the grievance procedure set forth in the employee handbook. 422 Mass. at 695, 664 N.E.2d at 849. As the Court stated, "[plaintiff] cannot assert a right to unfair treatment under one part of her employment contract and fail to follow the procedures set forth in another part of that contract that could provide relief from that unfair treatment." Id.

In any event, Horton claims that the investigation was inadequate because TSI Fenway did not provide her the opportunity to meet with the General Manager, management or the Human Resources Director when determining whether to terminate her employment. The Company had no duty to provide Horton the opportunity to meet with the General Manager, management or the Human Resources Director when determining whether to terminate her employment. Horton alleges that the Complaint Handling Procedure creates this duty. However, as stated above, the Complaint Handling Procedure is a grievance procedure that is triggered by the employee filing a complaint. (Employee Handbook at p. 8.)

Furthermore, the Progressive Discipline Policy, the policy which provides guidelines concerning discipline and termination, only provides that there will be an investigation. It does not state what that investigation will include or commit the Company to including an interview with the accused employee. The Company cannot be held liable for breaching a duty that does not exist. Joyal v. Hasbro, Inc., 380 F.3d 14, 19 (1st Cir. 2004) (court granted employer summary judgment on employee's claim for breach of contract based on an employee handbook because even if the handbook was a contract, the handbook's progressive discipline policy did not create the duty claimed).

Horton has not sufficiently alleged that the Company breached any duty contained in the Employee Handbook. Her claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II. COUNT III SHOULD BE DISMISSED BECAUSE HORTON FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED OR, ALTERNATIVELY, HORTON SHOULD BE ORDERED TO PROVIDE A MORE DEFINITE STATEMENT OF COUNT III.

Originally, Horton's breach of the implied covenant of good faith and fair dealing claim was based on the Company's alleged failure to conduct an adequate investigation before terminating her employment. There was no mention of a deprivation of a commission. After TSI Fenway pointed out that such a claim, among other things, requires deprivation of compensation, Horton suddenly claimed that the Company breached the covenant "by depriving Plaintiff of commission payments due Plaintiff from Plaintiff's customers who re-join TSI." (Amended Complaint at ¶ 49.) The only allegations made with respect to this claim are:

- As a Sales Consultant, Plaintiff was compensated on a "commission only" basis and received a commission for each new customer who purchased a TSI membership from Plaintiff. (Id. at ¶ 13.)

- Plaintiff also received commission payments when her customers "re-joined" TSI which often occurred after their membership lapsed during the Summer months. (Id. at ¶ 14.)

Horton's desperate efforts to salvage Count III are to no avail. She still fails to allege facts establishing all elements of the claim. In order to state a claim for breach of an implied covenant of good faith and fair dealing on the basis of deprivation of commissions, a plaintiff must allege that she has been deprived of commissions already due or commissions accrued and reasonably ascertainable. See Gram v. Liberty Mutual Ins. Co. (Gram I), 384 Mass. 659, 671-672, 429 N.E.2d 21, 29 (1981). Here, Horton has alleged neither. Nowhere in the Amended Complaint does Horton allege that she was not paid accrued commissions. Paragraphs 13 and 14 of her Amended Complaint allege that she was *paid* commissions. Paragraph 49, the only other allegation relating to this claim,

appears to refer to some commission she may obtain in the future *if* any of her customers allow their contracts to lapse and then "re-join." She fails to identify specific customers who she believes will "re-join". She does not even allege any efforts that she made, the fruits of which she will be denied. The allegation is nothing more than a back door attempt to obtain damages that would be obtained for future services rendered. As the Massachusetts Supreme Judicial Court cautioned when instructing on the limits of a claim for the loss of commissions based on an event to occur in the future:

> It is important to recall that [plaintiff] served as an employee at will. He is not entitled to damages on the basis of a breach of contract for life or for a term of years. The recovery allowed [plaintiff] in our earlier opinion pressed to the limit the recovery allowed to an at-will employee discharged without cause...We must be careful not to approach allowance of contract damages as if [plaintiff] had a contract for life or for a term of years. Our goal is and has been simply to deny Liberty any readily definable, financial windfall resulting from the denial to [plaintiff] of compensation for past services.

Gram v. Liberty Mutual Ins. Co. (Gram II), 391 Mass. 333, 334-335, 461 N.E.2d 796, 798 (1996); see also King v. Driscoll, 424 Mass. 1, 7, 673 N.E.2d 859, 862-863 (1996). Horton has had two opportunities to state a claim for breach of the implied covenant of good faith and fair dealing, and continues to be unable to do so. As a result, the Court should dismiss her claim with prejudice. Alternatively, the Court should order Horton to make a more definite statement of her claim without prejudice to TSI Fenway bringing another motion to dismiss the restated claim should Horton's allegations continue to fail to state a claim.[4]

---

[4] Horton should be ordered to identify: (1) what commissions have been accrued, but not paid; (2) what is meant by "re-join"; and (3) any efforts that she has made to have these customers "re-join". Without such allegations, Defendants are unable to respond to Horton's claim.

13

## Conclusion

As shown above, Horton's claims for breach of an implied contract and breach of the covenant of good faith and fair dealing should be dismissed because they fail to allege a legally cognizable claim under Massachusetts law. Alternatively, with respect to her claim for breach of the implied covenant of good faith and fair dealing, Horton should be ordered to provide a more definite statement of her claim because TSI Fenway is unable to respond to it as drafted.

Respectfully submitted,

TSI FENWAY, INC. D/B/A
BOSTON SPORTS CLUBS

By their attorneys,

Laurie J. Hurtt (BBO#634149)
Greenberg Traurig, LLP
One International Place
Boston, MA 02110
Tel: (617) 310-6000
Fax: (617) 310-6001

and

Brian S. Cousin, admitted
*pro hac vice*
Greenberg Traurig, LLP
200 Park Avenue
New York, New York 10166
Tel: (212) 801-9354
Fax: (212) 805-9354

Dated: November 29, 2004

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

I, Laurie J. Hurtt, hereby certify that on the 10th and 26th day of November, 2004, I conferred with counsel for Plaintiff Sarah Horton, Jonathan R. Black, Esq., by telephone in a good faith attempt to resolve of narrow the issues presented in this motion.

_____
Laurie J. Hurtt

## CERTIFICATE OF SERVICE

I, Laurie J. Hurtt, hereby certify that on the 29th day of November, 2004, I served by facsimile and first class mail, postage pre-paid, a copy of the above to the following counsel of record: Jonathan R. Black, Esq., 99 Derby Street, Suite 200, Hingham, MA 02043.

_____
Laurie J. Hurtt

::ODMA\PCDOCS\BOS_XP\153560\1